| | | |
|---|---|---|
| **ROBERT J. CALUDA, APLC AND NEW ORLEANS PRIVATE PATROL SERVICE, INC.** | * | **NO. 2020-CA-0660** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| **VERSUS** | | **FOURTH CIRCUIT** |
| | * | |
| **THE CITY OF NEW ORLEANS, LINEBARGER GOGGAN, BLAIR & SAMPSON, L.L.P. AND UNITED GOVERNMENT SERVICES OF LOUISIANA, INC.** | * * * * * * * | **STATE OF LOUISIANA** |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01769, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Rosemary Ledet)

*LEDET, J., DISSENTS WITH REASONS*

Allain F. Hardin
FRANSEN & HARDIN, A.P.L.C.
807 Howard Avenue
New Orleans, LA 70113

      COUNSEL FOR PLAINTIFFS/APPELLEES

Lawrence Blake Jones
BLAKE JONES LAW FIRM, LLC
701 Poydras St., Suite 4100
New Orleans, LA 70139
-AND-
Errol Barry Conley
LAW OFFICE OF ERROL B. CONLEY
701 Poydras St., Suite 4100
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLANT, THE CITY OF NEW
      ORLEANS

                        **AFFIRMED**
                    **APRIL 28, 2021**

On appeal from the judgment of August 18, 2020, wherein the district court granted the plaintiffs' Motion to Certify a Class, the City of New Orleans ("the City") argues that the district court erred in granting the motion because the plaintiffs' claim has prescribed. After review of the record in light of the arguments of the parties and applicable law, we affirm the district court judgment.

***Relevant Facts and Procedural History***

In March 1998, the New Orleans City Council adopted Ordinance No. 18637, which permitted the City to contract out collection of delinquent property taxes and impose a penalty for collection costs.[1] *Fransen v. City of New Orleans,* 2008-0076, p. 2 (La. 7/1/2008), 988 So. 2d 225, 228-29. Delinquent taxpayers[2]

---

[1] Specifically, the ordinance imposed an initial 3% penalty on the day of delinquency (February 1) and added a 30% penalty if it was unpaid by April 1; if the tax was unpaid after April 1, the City referred the debt to a collection agency. In order to challenge the penalties, taxpayers were required to file payment under protest by June 1 of the year the penalties were imposed but because of a drafting error the payment-under-protest requirement did not apply from April 17, 2000 through March 5, 2002.

[2] It is noteworthy that in the early stages of litigation pertaining to the ordinance, no reference or distinction is made between types of property owned (movable or immovable) by the taxpayer plaintiffs. In the initial *Fransen* appeal on the issue of prescription, the plaintiffs are simply characterized as owners "of personal property" who "for various reasons did not pay their taxes timely." *Fransen v. City of New Orleans,* 2002-2384, p. 1 (La. App. 4 Cir. 11/19/2003), 862 So.2d 142, 144. In a subsequent appeal from the district court judgment finding the ordinance constitutional and granting summary judgment to the City, this court adopted the facts as stated in the earlier appeal, and reversed the district court judgment with respect to the constitutionality of the ordinance. *Fransen,* 2006-1325 (La. App. 4 Cir. 10/3/2007), 870 So. 2d 1. Again, with regard to the plaintiffs and/or the constitutionality of the ordinance, there is no reference to (or

filed suit in the Civil District Court for the Parish of Orleans, arguing out that the ordinance was unconstitutional. *See Fransen, supra.* In 2008, the Louisiana Supreme Court agreed, finding that the ordinance (codified as the New Orleans Code of Ordinance, Chapter 150, art. II, §§ 150-46.1-150-46.6) went beyond the mandated tax sales provisions enunciated in the state constitution. Specifically, the Louisiana Supreme Court held that the state "constitutional provision relating to property taxation permits the governmental subdivision to *impose* only the taxes, interests and costs in proceeding to sell the property for delinquent *ad valorem* taxes" and, therefore, the City's action in authorizing delinquent *ad valorem* taxes on immovable property for collection with an attorney or agent and assessing a 30% penalty for costs is unconstitutional because the state constitution prohibits methods or proceedings other than tax sales to collect delinquent *ad valorem* property taxes. *Fransen,* 2008-0076, p.24-25, 988 So.2d at 242-243. The matter was remanded to the district court where, on January 18, 2019, the district court certified the *Fransen* class as one restricted to only those who paid real estate (immovable) *ad valorem* taxes from April 17, 2000 through March 5, 2002, implicitly excluding the personal property owner taxpayers who paid the delinquent taxes and collection costs on business personal (movable) property taxes during the same period.

---

distinction made) as to movable or immovable property. In its subsequent decision, the Louisiana Supreme Court made no distinction between movable and immovable property in its constitutional analysis but observed that the plaintiffs (Fransen and Hardin) were owners of immovable property and framed its conclusion in terms of "delinquent property taxes on immovables." *Fransen,* 2008-0076, 2008-0087, pp. 4 & 25, 988 So. 2d 988 So.2d 225, 231 & 243. In certifying the *Fransen* class as restricted to immovable property owners, the district court reflects the Louisiana Supreme Court decision with no discussion, analysis, or explicit rejection of the movable property taxpayers as a class, why the class parameters are restricted to immovable property owners, or differentiating the constitutionality/unconstitutionality of the ordinance with respect to the two types of property.

Shortly thereafter, on February 15, 2019, the plaintiffs implicitly excluded from the *Fransen* class action, *i.e.,* those who paid delinquent *ad valorem* property taxes pursuant to the ordinance on movable property, filed this separate class action petition against the City. The plaintiffs also named as defendants the two entities that collected the disputed taxes on the City's behalf: Linebarger, Goggan, Blair & Sampson, L.L.P. ("Linebarger") and United Governmental Services of Louisiana, Inc. (UGSL).  On March 19, 2019, Linebarger and UGSL removed the matter to federal court.  The federal district court granted a motion to sever the claims against the City from the claims against Linebarger and UGSL on July 22, 2019, and remanded the claims against the City back to state court.  *Robert J. Caluda v. City of New Orleans*, 403 F.Supp.3d 522 (E.D. La 2019).

On August 6, 2019, shortly after the remand back to the Civil District Court of Orleans Parish, the plaintiffs filed the motion to file the Motion for Class Certification that had been filed in the U.S. District Court into the state district court case.  The district court granted the motion, allowing the plaintiffs' Motion for Class Certification to be filed.  After the hearing (held on March 20, 2020) and the filing of post-hearing memorandum by both parties, the district court granted the plaintiffs' Motion for Class Certification on August 18, 2020. The class is defined as follows:

> Those persons and/or entities or their heirs, successors, or assigns, who pursuant to New Orleans City Ordinance No. 18637 were assessed City penalties and collection/penalty fees by defendants and who paid these unconstitutional penalties and collection/penalty fees, from April 17, 2000 through March 5, 2002, for late pay of business personal *ad valorem* property taxes.

The City timely filed a motion for this devolutive appeal.

***Sole Assignment of Error***

3

The City assigns a singular error on appeal: "[t]he trial court erred when it denied the City's Exceptions of Prescription and No Cause of Action." However, although the motion for appeal filed by the City seeks to appeal the district court's judgment of August 18, 2020, that judgment does not deny the City's exceptions, it only grants the Plaintiffs' Motion to Certify Class. Although the City contends that the district court mentioned the exceptions in the Reasons for Judgment, a "district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Bellard v. Am. Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671. Moreover, the district court states in its Reasons for Judgment that the City's exceptions were denied prior to the hearing on the Motion to Certify Class. Thus, because there is no judgment denying the exceptions contained in the record before us, the exceptions are not properly before us for review. Accordingly, we only review whether the district court abused its discretion by granting the Motion to Certify Class.

### Standard of Review

"The standard of review for class certification is bifurcated: factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court's judgment on whether to certify the class is reviewed under the abuse of discretion standard." *Wallace v. Louisiana Citizens Prop. Ins. Corp.*, 10-0647, p. 4 (La. App. 4 Cir. 12/6/10), 53 So. 3d 514, 518 (citations omitted). "[E]rrors made in deciding class actions should be in favor of and not against the maintenance of a class action" because class certification may be modified or the class decertified if warranted by subsequent developments in the litigation. *Id.* (citation omitted); *see also* La. Code Civ. Proc. art. 592(A)(3)(c) (the court "may alter, amend, or recall

4

its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action")

***Applicable Law***

The purpose of a class action is "to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated." *Wallace,* 2010-0674, p. 5-6, 53 So.3d at 519 (citations omitted).

In accordance with Article 591 of the Louisiana Code Civil Procedure, a class action may be maintained if:

> (1) The class is so numerous that joinder of all members is impracticable.
> (2) There are questions of law or fact common to the class.
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
> (4) The representative parties will fairly and adequately protect the interests of the class.
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

La. Code. Civ. Proc. art. 591(A).

Once all of the above requirements are met, one of the following criteria must also be present:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
> (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive

of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or

(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

La. Code Civ. Proc. art. 591(B).

In turn, Louisiana Code of Civil Procedure art. 596 provides, in relevant part:

A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:

(1) As to any person electing to be excluded from the class, thirty days from the submission of that person's election form;

2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a

6

notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or

(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.

Article 596 "is a special provision, the purpose of which is to prevent prescription from accruing against the claims of members of a putative class action until such point as the propriety of the class action or the member's participation in the class action is determined." *Duckworth v. Louisiana Farm Bureau Mut. Ins. Co.*, 2011-2835, p. 14 (La. 11/2/12), 125 So. 3d 1057, 1065 (citation omitted). Therefore, a petition brought on behalf of a class suspends prescription as to all members of the class described or defined in the class petition until thirty days after a person is excluded from the class by the redefinition or restriction of the class and notice thereof is issued. *Duckworth,* 20011-2835, p. 14, 125 So.2d at 1065-66. Accordingly, "the *only* requirement for obtaining the benefit of the article's suspension of prescription is that one fall within the definition or description of a putative class member." *Duckworth,* 2011-2835, p. 15, 125 So.2d at 1066 (emphasis in original). Moreover, in accordance with Article 596, "prescription, once suspended, does not recommence until the propriety of the class action or the member's participation in the action is *judicially* determined— either by a judgment certifying the class (and the timely submission of an election form), by a judgment restricting or redefining the membership of the class, or by a judgment dismissing the class action, striking the demand for class relief or denying certification—and until the requisite *notice* is issued." *Duckworth, supra.*

Under Louisiana law, prescriptive statutes are strictly construed against prescription and in favor of the claim that is said to be extinguished so that where

there are two possible constructions, "the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted." *Louisiana Health Serv. & Indem. Co. v. Tarver*, 635 So. 2d 1090, 1098 (La. 1994).

*Discussion*

The issue before the court in this appeal is whether the district court erred in granting the plaintiffs' class certification motion. On appeal, the City argues that the claims of these plaintiffs (who paid delinquent taxes and penalties under the unconstitutional ordinance on immovable property) is prescribed. The City's argument is (as it was in the court below) based on federal jurisprudence and principles not recognized in Louisiana law and previously rejected by the Louisiana Supreme Court.[3] *See Duckworth,* 2011-2835, p. 13, 125 So.2d at 1065 (consistent with dictates of civil law, in resolving issues Louisiana courts must first

---

[3] The dissent apparently adopts the City's argument that Article 596 is consistent with and "codifies" *China Agritech, Inc. v. Resh,* ___U.S. ___, 138 S .Ct. 1800, 1804 (2018) so that a Louisiana plaintiff excluded from a class action has 30 days to file an individual action only. Specifically, the dissent states that La. Code Civ. Proc. art. 596 "contains no provision suspending prescription to either class-wide claims or successor class-wide claims or successor actions," and, therefore, Article 596 should be interpreted "as not extending to successor class action or class-wide claims" consistent with federal jurisprudence. Notably, however, Article 596 contains no provision prohibiting individuals excluded in the description of a certified class from timely filing a class action. Moreover, common sense suggests that filing a class action on behalf of the movable property owners who paid delinquent taxes in accordance with the unconstitutional ordinance is the judicially efficient solution in this case.

Additionally, even accepting *arguendo* that *China Agritech* is applicable to Article 596, it is easily distinguishable. The issue in *China Agritech* was whether "[u]pon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations." The fear, as expressed by Justice Ginsburg, was that as each class is rejected or denied certification, "a new named plaintiff could file a class complaint that resuscitates the litigation," extending the statute of limitations indefinitely. *China Agritech,* 138 S. Ct. at 1808. This is not the case in this matter; the district court certified the *Fransen* class in terms of the immovable property owner taxpayer plaintiffs who paid delinquent taxes pursuant to the unconstitutional ordinance; the district court did not reject or even acknowledge movable property owner taxpayer plaintiffs. This is clearly not the abuse of the class action procedure (through the filing of serial petitions after each class is rejected) feared in *China Agritech* or in Justice Weimer's dissent in *Smith v. Transp. Servs. Co. of Illinois,* 2013-2788, p.11 (La. 7/1/14), 148 So.3d 903, 910. Rather, it is the effort of plaintiffs who have followed the state rules and procedures to protect their interests with regard to an unconstitutional ordinance. To deny them certification at this point in the proceedings would be the creation of a classic Catch-22.

look to the language of the pertinent codal provision, "not the jurisprudence and not the decisions of the federal courts").

*Prescription*

It is undisputed that the movable property taxpayer plaintiffs in this matter were included in the *Fransen* petition for class certification as taxpayers who paid taxes and penalties in accordance with the unconstitutional ordinance. The district court determined implicitly that the *Fransen* class action petition (which included payers of tax penalties on both movable and immovable property) was too broad and, therefore, certified the class in the terms employed by Louisiana Supreme Court in its *Fransen* decision: those taxpayers who paid real estate (immovable property) *ad valorem* tax penalties.[4] Therefore, because the payers of business personal (movable property) *ad valorem* tax penalties were included in the *Fransen* petition but not in the more restrictive *Fransen* class definition (immovable property taxpayers), the prescriptive period was suspended under Article 596 for thirty days after the district court restricted the *Fransen* class to those who paid tax penalties and collection costs on immovable property. The remaining plaintiffs (who paid tax penalties and collection costs on movable property) timely filed the instant petition for class certification. There is no merit to the City's arguments that the district court abused its discretion in granting the motion to certify the class because the plaintiffs' claims are prescribed or that the Article 591(A) "numerosity" requirement cannot be met because the plaintiffs' claims are prescribed.

---

[4] To reiterate, in limiting the *Fransen* class to only immovable property owner taxpayers, the district court did not acknowledge, reference, or explicitly reject the movable property owner taxpayers.

9

With regard to the remaining criteria for class certification under Article 591(A), including commonality, typicality, and adequacy of representation, the district court's reasons for judgment demonstrate that these were also met. Specifically, the trial court stated:

> In this case, there is a "common nucleus of operative facts" as to each potential class member; each potential class member paid late payment and collections penalties to the City and Linebarger/UGSL. The constitutionality of the late payment and collections penalty scheme as applied to business personal *ad valorem* property taxes, devised under Ordinance 18637, is common to every member of the putative class. . . . In this case, each class member paid allegedly unconstitutional charges, and this fact and legal issue is common to all.
>
>       \*       \*       \*
>
> The typicality requirement for class certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct giving rise to the claims of the other class members and are based on the same legal theory. . . . The payment of these alleged unconstitutional penalties and fees form the basis of this class action claim.
>
>       \*       \*       \*
>
> In this case, the proposed class representatives are well suited [sic] to represent the interest of the class. Mr. Caluda is the principal of Robert Caluda, APLC, and Mr. Gurvich is the owner of New Orleans Private Patrol Service, Inc. Mr. Caluda and Mr. Gurvich are attorneys, and both individuals had business personal property assessed in the City, paid the alleged unconstitutional charges, and seek return of their payment of these charges. Mr. Caluda and Mr. Gurvich are represented by the same counsel involved in the *Fransen* matter and desire to represent the class to the fullest extent possible.
>
>       \*       \*       \*
>
> . . . The definable group of potential class members is based on the City's records of those business personal property owners who paid the alleged unconstitutional city penalties and collection/penalty fees added to the property tax bills for late payment of business personal ad valorem taxes during the applicable period. . . . This class definition tracks the language of the definition upheld in the *Fransen* case with the difference being the specific reference to business personal *ad valorem* property taxes.

10

$*$ $*$ $*$

> The Court is persuaded by Plaintiffs' assertions and believe [sic] that Plaintiffs have satisfied at least one of the requirements of La. C.C.P. Art. 591(B).

Accordingly, the district court did not err in granting the plaintiffs' Motion for Class Certification. The class plaintiffs in this matter timely followed Louisiana law and procedure, timely filing the appropriate petitions and motions at each stage of the proceeding. The City does not dispute the unconstitutionality of the ordinance or that the class plaintiffs paid tax penalties and collections costs pursuant to the unconstitutional ordinance. The City's argument that the court should look to federal jurisprudence to find the plaintiffs' claims prescribed in this matter and, therefore, procedurally barred is without merit under Louisiana law.

### *Conclusion*

After consideration of the record in light of the applicable law and arguments of the parties, the district court judgment is affirmed.

**AFFIRMED.**